Our next case for argument is 23-1937, Shell v. Scientific Design. Mr. Speed, please proceed. May it please the Court, Nathan Speed on behalf of the appellant, Shell. The Board's final written decision here, finding the claims in three Shell patents to be obvious, should be at a minimum vacated. The Board's determination suffers from a fundamental flaw. It's premised on an argument that scientific design never advances and for which substantial evidence is lacking. The claims on appeal relate to a catalyst carrier which has specific physical characteristics. These include a surface area and a pore size distribution which is the size of the pores within the carrier. It's undisputed that those two limitations are interdependent. A change to one will impact the other. In their petition for ground four, they argued that the claims were obvious over two references, the Lockermeyer reference and the Liu reference. Lockermeyer discloses all the limitations but it doesn't disclose the claim pore size distribution and the Liu reference discloses the claim pore size distribution but it doesn't disclose the claim surface area. They argue that a person skilled at reading those two references would take the pore size distribution of certain carriers in Liu and use them in Lockermeyer. What they didn't account for in their petition, ground four, they never accounted for the interdependent nature of those two variables. The change that they were proposing was going to have a change in surface area and they never accounted for that. Despite that not being advanced in their petition, the Board at page 27 of its final written decision made the finding that quote, a person already at skill would have been motivated and able to maintain the surface area of a Lockermeyer carrier within the claimed range. That is a critical fact finding given the interdependent nature of those variables. Without that finding, the claims could not have been found obvious and it's a finding that's based on an argument that the Board came up with and it was not advanced by the petitioner. The petition's ground four is on eight pages. It's appendix 313 to 322. I guess that's nine pages, my apologies. And I invite the court to look at that. There's nothing in there about maintaining a surface area of Lockermeyer when you make this combination. It has a motivation to combine section at appendix 315 to 317. The entire motivation to combine is focused on why POZA allegedly would have used the poor size distribution of lube in Lockermeyer. It never once addressed the surface area. When they cite paragraphs 167 and 168 of Dr. Haller's declaration and 163 of his reply declaration, don't you think that that is directed to maintaining the surface area? The Board, Your Honor, is that the question? Yes. Yes. So I think that they thought that that was going to the surface area. But as we've walked through in our opening brief, those paragraphs don't address that issue whatsoever. Paragraphs 167 and 168, they address only poor size distribution. They don't address surface area. In their response brief, they haven't really disputed that 167 and 168 are about poor size distribution, kind of the fundamental motivation combined that they advanced in their ground four. 163, which is from their reply declaration, not from the declaration they submitted with the petition, 163 does say at the very end that a POZA would have made the claimed carriers with routine experimentation. That paragraph, however, focuses again on poor size distribution. It doesn't mention surface area at all. And the statement claimed carriers is a conclusionary assertion by an expert, which is not substantial evidence, even if it somehow is interpreted to relate to surface area. So the three paragraphs that the board actually cited do not provide any substantial evidence support for the finding that a POZA would have had a reason to maintain locomized surface area within the claim area. It's simply not there. And when we pointed that out in our opening brief, they said, well, yeah, you need to look at the next paragraph. In the next paragraph of the board's decision, it said, we've considered the full record and conclude that a POZA would have had a reasonable expectation of success in reaching the claimed invention. But we did address that in our opening brief. We walked through in detail each and every paragraph that the board had in its spring citation. And those paragraphs all go to poor size distribution and why, allegedly, it would have been obvious to modify the locomy reference in the first instance. They never go to surface area, which is the critical issue. And a whole slew of the paragraphs, we point out, deal with dependent claims that have nothing to do with this issue at all. As best we could surmise, the board went into the declaration and looked for the phrase reasonable expectation of success, because that's the commonality of all the cited paragraphs. So nothing that the board cites, whether it's the three paragraphs that they actually cite to support their finding, or the numerous other paragraphs that they cite as evidencing the full record. None of it gets to surface area. And that's because scientific design never made the argument. And therefore, it's unsurprising that there's no evidence in the record to support it. Their reply brief, when we raised this issue, one would think that they might have made the argument in the reply brief. But the reply brief is that Appendix 6225 to 6229, and again, you can look at those pages. There is nothing in there on surface area. It's all focused on whether or not a person who's killing the art would have been motivated to modify Lockermeyer in the first instance. We disputed that hotly below, and there's a lot of fights on that. We don't dispute it here on appeal, because at the end of the day, it doesn't matter, because if you make the modification that they're proposing, if you're changing Lockermeyer's carrier so that it has loose surface area, or sorry, loose pore size distribution, that's going to impact Lockermeyer's surface area. And the only evidence in the record as to what a carrier has if it uses loose pore size distribution is Loo itself. Loo reports three different carriers with pore size distribution. Carrier S has a pore size distribution of 1.24. That's the closest that they can get to 1.3. It's not within the claimed range. Lockermeyer itself, in paragraph 6, says if it's above 1.0, we're in a preferable range. So there's nothing there to tell a person who is ordering a skill in the art why they would not be happy with the 1.24 that Loo already is providing with its pore size distribution, which, given that the whole combination is premised on the idea that the pore size distribution of Loo is specially optimized, let's use that. Once you use it, you get to 1.24, and that's not within the claimed range. They had no argument that a person of skill in the art would have simultaneously modified the pore size distribution again to somehow tweak it to get it to 1.3. It's just not an argument that was raised in the petition. And therefore, it's an error for the board to have relied on it. And as we've already talked about, because it wasn't in advance, there's no substantial evidence to support it. Counsel, going back to one of the declarations that you talked about a little bit earlier, if you look at, I believe it's appendix page 2793, and you were talking about paragraph 163. I know that you point out that this particular paragraph does specifically talk about pore size distribution, but I'm wondering if, in the rest of the sentence, where it talks about a process for making the carrier that's virtually identical to the process disclosed in the 390 patent, whether or not that sort of broad language could also encompass the other portion that you feel like was not being addressed with respect to the 390 patent. With all due respect, I don't see how that earlier reference to Lockermeyer, because Lockermeyer was earlier work of the same inventors, the fact that they are using a similar process, I don't see how that gets to the critical finding that we're focusing on here, which is that a person of skill in the art had a reason to keep Lockermeyer's surface area above 1.3. We've seen their petition, their reply brief, and their response brief in this appeal. Today, I have no idea what they think is the reason that a person of skill in the art not looking at our claim. 1.3 is in our claim. If we put that aside, as we're supposed to in the obviousness context, there's no reason why a person of skill in the art would have been motivated to maintain Lockermeyer's surface area at some level above 1.3. It's simply not there. And respectfully, I just don't see how 163 can be reasonably interpreted to support that specific finding of a reason that motivated POSAs to further modify the hypothetical Lockermeyer carrier so that it had a surface area that was in the claim range. Unless there's any questions, I can reserve my time for questions.  That'd be great. Ms. Stetson. Good morning, Your Honors. May it please the Court. My name is Kate Stetson. I represent Scientific Design. I want to iron out a couple of things that I think are the relevant foundations for this argument. And one of them is what we're talking about is the motivation to combine, which we know is motivation to combine with a reasonable expectation of success. That's the language. Reasonable expectation of success in practicing the claimed invention. That's this Court's decision in Fizer versus Apoteks. So what does that mean in this case? What that means is achieving the claimed invention is combining Lockermeyer and Lew with the expectation that you would optimize within those ranges of surface area and pore size distribution and nested pore size distribution to achieve the claimed invention. Now, Shell's core argument, which we heard again four or five times today, is that scientific design never explained how a person of skill in the art would have been motivated to maintain the surface area of the catalyst. You heard Mr. Speed say that. And that's what Shell refers to as the critical fact for this appeal. It's a brief 37. A carrier's pore size distribution and surface area are interdependent. But this Court also said in Fizer, and this is the key fact, obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art, so long as there was a reasonable probability of success. And that is exactly what the factual evidence showed here and what the board concluded. Pore size distribution and surface area are interdependent to some degree. But then the question is, could a person of skill in the art, was a person of skill in the art capable of optimizing those ranges to achieve the claimed invention? But where did you argue it? I mean, his argument is you didn't make this argument. I understand the argument and I understand what the board found. But his concern is, raised to us properly, where is this argument in this petition? Let me point you to all the places we made this argument. That'd be great. But I want to add one caveat. What Mr. Speed is describing as the argument presumes a fact that was found against him. So what Mr. Speed describes as the argument, you didn't show me a reason to maintain the surface area of Lockermire when you dropped in that nested pore sizes of loo. What the evidence showed over and over again, starting with the petition, and you can look for example, we'll start at Appendix 297. The evidence showed that because Lockermire sketched out two important things, right? Lockermire sketched out the surface area and the wider range of pore size distribution. Then the question was, if you added loo to that, and remember, Lockermire specifically says you should experiment with all these ranges to find the optimal range. So you've got that motivation to combine, sometimes the hardest thing already in the record. So the question is, when you add loo to that, does something change? And this was the issue in the case. Mr. Speed is just phrasing in a different way. So starting at Appendix 297, what the petition notes is that because the 390 patent, the challenge patent, recites an open-ended range of at least 1.3 meters squared per gram for surface area, and an upper limit of infinity, a POSA would have been able to achieve the claimed surface area with a simple design choice, or to the extent necessary, routine optimization. So that's Appendix 295, 297. You can also see that in our reply at 2491. You can see it at the Haller reply at 2755. What that means, as we explained, is under the patent, you can also mark the surface area indefinitely without changing the relevant pore size distribution. Also in the patent itself, this way. I think I'm missing it. You directed me to 297. I'm sorry if I missed it. Where on 297 does it articulate this point about maintaining the surface area? So 297 is in a section entitled Surface Area, which begins on the bottom of page 294. And we discuss in 295 to 297 the nature of the prior disclosure's preferred surface area. And on 297, what I was referencing- And what is this document? What's 297? Is this your petition? This is the petition. OK. Go ahead. And I started here because this was raised from the first, and then repeated in the Haller declaration in the reply. What I was mentioning on 297 is that the 390 patent, and this is also on 295, as I mentioned, has an upper limit of infinity. That's line 2 of page 295. We mentioned it again on line 6 of page 297. Then further on in page 297, a POSA would have been able to achieve the claimed range of at least 1.3 meters squared per gram. That's the surface area. With a simple design choice, or to the extent necessary, routine optimization. That's what I was referring to. So if you start from- Can you take us now to the portions of the Haller declaration where the surface area aspect is also discussed? Because at least the polling council was arguing that that is not discussed there. Certainly. And let me give you the pages, and then I'll explain what the daylight is between me and Mr. Spitz. The relevant pages are reply declaration 2229 to 2230. You can also find at appendix 2222 the fact that the surface area is indistinguishable. And on page 2225 would not cause any difference from the surface area of the 390 patent. Page 2794, paragraph 166, a POSA would have modified Lockermeyer with Lew's core size distribution, quote, while keeping the surface area above 1 meter squared per gram, which refers to Lockermeyer's disclosed range. You can also look at page 694 to 697, which is the Haller opening declaration, and appendix 376, which is Lockermeyer. Here is the daylight between me and Mr. Spitz. The daylight has to do with that critical fact. What the critical fact that Mr. Spitz talks about is what I mentioned earlier. A carrier's core size distribution and surface area are interdependent. On that, we all agree. Our experts agree. But look at what Mr. Spitz does in his brief with that at pages 359, 21, 22, and 32. What he says is interdependent, quote, such that a POSA would not assume that a carrier's core size distribution could be modified without impacting the carrier's surface area, close quote. That's at page 3. So that additional fact is the problem here, because that is the fact that Haller, Dr. Haller testified repeatedly against. There was no problem with working within that nested inner range of core sizes within the structure of the outer range and the surface area that Lockermeyer described, and a reasonable, a skilled person in the art would have just, as Lockermeyer instructs, found a way to work within that range. You see it in the patent. You see it, too, in the comparison of the Lew patent to the patent here. So just to take a look at the Lew patent, when the surface area, and this is at appendix 2756, paragraph 70. This is the Haller reply declaration. When the surface area increased from carrier T, which is 1.13 surface area, to carrier S, which is 1.24 surface area, the pore size distribution remained within the claimed ranges. So you have Dr. Haller teaching you that just because surface area changes, the pore size ranges do not. You see that again in the comparison between the patent itself, carriers B and C of the patent, and this is at table 1, appendix 117. Carriers B and C have much different surface areas, but their pore size distribution is not changed within the relevant ranges. So those are the facts and the statements within the patent, within the prior art, by our declarant expert, both in his opening declaration and in his reply, that lead you through the fact question that Mr. Speed is fighting here. The fact question that Mr. Speed argues is, these are so interdependent that when you change one, if you start messing with pore size distribution, you're going to change surface area. And we explained, and certainly Dr. Haller explained over and over again, that that fact is wrong. So it is that fact that we are arguing about today, and as was discussed earlier, unless Judge Hughes accepts his appointment as a fact administrator for the circuit, this is not a circuit that is in the business of going underneath those facts. Now I want to kind of address and diffuse one thing that I think we'll hear from Mr. Speed, which is the board didn't cite some of the pages of evidence that I'm talking about. But TQ Delta from this court teaches that when you're looking at substantial evidence review, you look at the entire record, and you do that because you're looking at the evidence that supports the fact finding and the evidence that doesn't support the fact finding. That's why you look at the entire record. What you can't do, as this court explained in the Google case, among others, is the board can't invent a new legal ground for a finding that wasn't argued. The board can't point to a piece of prior art that wasn't referenced. You know, all of the things that the board has made, board has made substantial footfalls, you know, in the past. I want to make clear that that has nothing to do with the basis for a fact finding that is in the board's record. And I want to emphasize where this is in the board's record. Because if you look at Mr. Speed's brief, one of the things that you'll see is that he addresses most but not all of the pages of the board's analysis. The page that he doesn't address is the page that talks about this interdependency question. And it addresses this idea that because, as the board concluded, what you were talking about is a narrow range within a range, that that single variable can be optimized by a person of skill in the art who is reasonably capable of figuring out, as instructed by Lockmeyer, how do I get the best results when I'm maintaining this surface area, when I'm maintaining this outer range of course. I'm just going to work with this inner range and see what I can do to make sure everything else stays stable. That page, those pages, appendix 26 to 27, go, 26 goes unmentioned in the brief. That's the key here. So if you look at appendix page 22, what you find is the board concluding that it was persuaded by a petitioner's reasoning and supporting testimony regarding why a POSA would have been motivated to make the combination with a reasonable expectation of success. Appendix 22 again, Lockmeyer discloses the outer pore size distribution range of claim one in addition to surface area. Relying on loom to determine the best distribution within that range was therefore not so much a modification of Lockmeyer as an optimization of Lockmeyer's pore size distribution. And then on pages 26 to 27, as I mentioned, the board rejects the citations to the cases where the variables operated in an unpredictable way. So at bottom, that is a sheer, pure, singular fact question that we are here discussing. The fact is these two variables are interdependent. The additional fact that the board concluded is they are not so interdependent that a reasonable, skilled person in the art can't work with them to achieve the claimed invention. That is the reasonable expectation of success that we're talking about. And the board concluded based on Dr. Howler's testimony and our statements in our petition and in our reply that that was achievable. If there are no further questions. Okay, Mr. Speed, you have some rebuttal time. Thank you, Your Honor. Real quick, just on Appendix 297, which is where counsel pointed you to for where the reasoning for the motivation was, I just want to point out, that is ground one of the petition. And that's a main point that we emphasize in our briefing. They raised an argument in their petition. Their ground one was Lou alone. And they said that ground one anticipates and or presumptively renders these claims obvious. There was a big fight between the parties on ground one, and the board conspicuously never resolved ground one. So they treat everything that is in ground one, all the facts, all the evidence, all the arguments for ground one as if it was decided in their favor. But the board didn't resolve that ground. And so it's just as likely that the board looked at that and they weren't persuaded by that evidence and said let's move the ground forward to more classic motivation and combined theory. And that's where the board went by focusing on it. Yeah, but within ground four, I'll point you to page 319. Unless I'm mistaken, they cross-referenced within ground four, the ground one arguments, pointing in particular to, I think, citing what I will say, JA pages 294 to 299, which is including 297. So am I missing something? I don't think you're missing something, except I would ask if you turn to 317, just the page prior. This is included in a section where it's addressing secondary considerations. What they did in ground four is they presented a classic gram-based obvious challenge. They had two references, a primary reference, a secondary reference. They had a motivation combined from 315 to 317. And then at 317, they wanted to get ahead of the potential that we would introduce secondary considerations non-obvious. And so they cited two certain cases, the Heller case and the Huang case, I believe, in this section. To emphasize the point that unexpected results need to be different in kind, not degree, to matter in the context of secondary considerations. There is nothing in here saying, look back to ground one to find our motivation for why a person with a skill in the art would have maintained the surface level of Volckemeier at the claimed surface level. I think there is still daylight between the parties here. Most of what I heard from opposing counsel went to whether or not a person with a skill in the art could have done this. Could they have tweaked Lew's pore size distribution just to get us to that surface area above 1.3? We don't- Given that we're reviewing the board's analysis, and you're saying this issue wasn't raised with regard to ground four, and they specifically reference the exact pages where it's raised with regard to ground one and they sort of pull it into ground four here. Are you saying it was somehow an APA violation for the board to nonetheless consider that argument because they couched it in the secondary consideration analysis, even though they kind of pulled all those exact pages in? It's a very attenuated thing. Well, I think the fact that we're looking at 319 is somewhat attenuated too, because the board cited the paragraphs that it was relying on to make its fact finding. We talked about that in my opening argument. That was 167 and 168 of the opening declaration and 163 of the reply. So the board told the parties, this is what we're relying on to make this finding. They didn't cite to this portion of the petition. Is she inaccurate in her statement of the law, which is that we review this for substantial evidence and that we look at the record to see if there's substantial evidence? Is this a Chenery problem? Are we not allowed to look at the other evidence that the board didn't cite? You tell me how that works from a legal standpoint. My understanding is that that is a misstatement of law, that when a decision comes from an agency under the confines of the APA, the agency has an obligation to set forth the facts and the reason decision-making based on those facts. And this court can't go looking around the record to see if there are other facts lurking in the record that could have supported it. If the board thought that those facts supported it, it was their obligation as administrative agency to put us on notice in the decision to do that. So this isn't like a district court judgment where you have a more plenary review of what the record was because you're reviewing a judgment and not the memorandum or the opinion. So you're saying if the board makes factual findings and points to two specific pieces of evidence, those are the only pieces of evidence we can look at to see whether there's substantial evidence? No, I'm not saying it's just those two and that's why our opening brief, I think, frankly, our briefs... We can look at the entire record to see if there's evidence to support that factual finding. We can't, they can't say, well, here's another theory of the case that's supported by the record. That clearly is a problem. But if they make a specific factual finding and cite to only two pieces of evidence, you agree that we can also look at other proper evidence in the record to see whether that is substantial evidence, right? I would agree that they need to look at other evidence that the board cited in its decision if there's a rational connection between... You think that we're confined to only evidence that the board cited in its decision? What case do you have that supports that? That doesn't sound like substantial evidence review to me. I would point to the In Re Google case, the PPC Broadband case, where the PTO in that case attempted to rely on an interpretation of a figure that the reference was in there and it was an interpretation that the board never actually found. And so this court said that we can't be... We're not going to affirm board decisions on the facts that were not found by the board. But that's not what we're asking about. We're asking about a factual finding that the board did make and there's other evidence in the record to support that than what the board actually pointed to. Sure, they can't argue new fact findings on appeal that the board didn't make. We won't look at that, but that's not what we're asking about. So I'll... If I could sidestep slightly in the last minute, I just would say that even the facts that they're pointing to... So the only paragraph that they can point to that says surface area and says keep surface area is paragraph 166 of the reply declaration. It wasn't cited by the board, but if we dealt with that, all it says is maintain the surface area above 1.0. The claim is to 1.3. There's nothing in that paragraph that says why you would get to 1.3. To this day, we still don't have a reason why a person is feeling the ire. Having modified Lockemeyer in view of Lew would say, oh, I need to make a further change and keep it above 1.3. That is hindsight. It's just like the Moderna case where you had interdependent variables and they gave reasons why you adjust each one, but they never accounted for the interdependent ability. And that's what happened here. There's no accounting for it. And so even if you looked at all the facts that they cite, I would ask you to look, Your Honor, to look at our reply brief where we walk through every single one of the paragraphs that they cited in their opposition brief and explain why none of it has anything to do with surface area. It certainly doesn't identify a reason why a person is feeling the ire would have done this. The only thing in the record saying get to 1.3 is our claim. That is hindsight. They can't do that. Thank you, Your Honor. Okay. Thank you, counsel. I think both counsel's cases take another submission.